United States District Court
Southern District of Texas

**ENTERED**

March 03, 2026

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Christopher M.,[1] | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-24-5053 |
| | § | |
| Frank J. Bisignano,[2] | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Christopher M. appeals the Social Security Administration Commissioner's final decision denying his application for Social Security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 10; and the Commissioner's Cross Motion for Summary Judgment and Brief in Support, ECF Nos. 14, 15. The parties consented to the jurisdiction of the undersigned magistrate judge for all purposes, including entry of final judgment. ECF Nos. 4, 7. Plaintiff's Motion for Summary Judgment is **GRANTED**. The Commissioner's Motion for Summary Judgment is **DENIED,** and the case is **REMANDED** for additional administrative proceedings consistent with this opinion.

---

[1] In light of guidance received from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which states that there are significant privacy concerns in social security cases, the court refers to the Plaintiff only by his first name and last initial.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Frank J. Bisignano is substituted as the defendant in this suit.

### 1. Procedural Posture

On July 28, 2021, Christopher filed applications for disability insurance benefits, under Title II of the Social Security Act, and supplemental social security income benefits, under Title XVI of the Social Security Act. Tr. 354, 357. Christopher alleged that his disability began on January 8, 2019, due to vision problems, a right hip fracture, arthropathy of the right hip joint, peripheral neuropathy, patellofemoral instability of the right knee, uncontrolled diabetes, diabetic ulcers on the bottom of his right foot, partial amputation of his left foot, sciatica, and daily hip pain. Tr. 408.

The SSA denied both of Christopher's applications at the initial level on December 23, 2021, and upon reconsideration on May 31, 2022. Tr. 139, 152. Administrative Law Judge (ALJ) William Howard held a hearing on November 8, 2022, which was postponed because Christopher had not received the exhibits. Tr. 33–44. The ALJ held another hearing on February 2, 2023, where Christopher and a Vocational Expert (VE) testified. Tr. 45–65. Christopher was not represented by counsel at that hearing.

The ALJ examined Christopher. Tr. 51. Christopher testified that he completed twelfth grade, but he did not graduate high school. Tr. 52. Christopher testified that the last time he worked in any capacity was in 2019, prior to being injured at work. Tr. 52. Christopher was injured when he fell from the top of a trailer to a concrete floor and fractured his right hip. Tr. 53. Shortly after his injury, Christopher had surgery to partially amputate his left foot. Tr. 53–54.

Christopher testified that he does not cook, wash dishes, do laundry, sweep, dust, exercise, or mow the lawn. Tr. 55–56. Christopher will occasionally take out the garbage, and he will grocery shop about once a month. *Id.* Christopher drives a Dodge Ram pickup truck and went fishing about two times in the year

2

prior to the hearing. Tr. 55, 57. Christopher can walk about 100 yards and stand for about an hour before needing to sit down. Tr. 57. He stated that he can lift about twenty or thirty pounds. Tr. 58. At that time, he stated that he took pain medication, and he did not use a walker, crutch, or cane. Tr. 58.

Christopher testified about his past work. In 2011, Christopher drove a vacuum truck and serviced portable toilets. Tr. 58. Then, Christopher worked loading and driving large 18-wheeler trucks.[3] *Id.*

On February 27, 2023, the ALJ issued a decision finding that Christopher was not disabled. Tr. 127. On July 19, 2023, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings because the decision did not include consideration of a Third-Party Function Report from Christopher's sister-in-law. Tr. 134–35.

After remand from the Appeals Council, the ALJ held a hearing on January 10, 2024. Tr. 66. Much of Christopher's testimony was the same at both the 2023 and 2024 hearings.

Christopher's counsel was present at the 2024 hearing, and he examined Christopher. Tr. 66, 70. Christopher testified that he has not returned to work and that he can only stand for 45 minutes to an hour before having problems with his feet. Tr. 70–71. Christopher stated that he needs surgery on his right foot but that he cannot afford it. Tr. 71. Sometimes Christopher's feet swell, so he elevates them. *Id.*

Christopher testified that he was on his feet most of the time in his past work. Tr. 72. Now, Christopher does not walk much, but he will drive about five minutes at a time. He dresses himself, but he does not cook or wash dishes, and he does not leave the

---

[3] The VE also testified at the February 2023 hearing. Tr. 59–64. That VE's testimony is not at issue in this appeal.

house often. Tr. 73–74. Christopher feels that his feet are getting worse than they were in the past. Tr. 74.

The ALJ examined Christopher. Christopher stated that he used to go fishing, but that he stopped fishing about a year or two prior to the hearing. Tr. 75. Christopher stated that he can walk about 100 yards, he can lift about 30–40 pounds, and that he does not take pain medication. Tr. 75. Christopher stated that after he broke his right hip, his right leg from the hip to his foot has been bothering him. Tr. 76. Christopher can sit for three to four hours. Tr. 76.

The VE testified that Christopher's past work history reflects a job as a truck driver with medium physical demands, which is considered an SVP four, semi-skilled position. Tr. 78. Christopher also worked as a material handler with heavy physical demands, which is an SVP three, semi-skilled position. *Id.*

The ALJ posed a series of hypothetical questions to the VE. He asked the VE first to assume a person of the same age, education and vocational background as Christopher; who could work at the light exertional level, but with standing or walking limited to four hours out of an eight-hour workday for no longer than an hour at a time; after an hour of standing or walking, the person should be allowed to sit for ten to fifteen minutes while continuing the work; the person could sit about six hours out of an eight-hour workday; lifting and/or carrying limited to ten pounds frequently, twenty pounds occasionally; no working in proximity to hazards such as deep water, open flames, dangerous moving machinery, or unprotected heights; only occasionally balance and negotiate stairs and ramps. Tr. 79. According to the VE, such a person could not perform Christopher's past work. *Id.* Such a person would not have any skills that would transfer from Christopher's past work. *Id.* Such a person could obtain work

4

available in the national economy as a ticket seller, photo-copy machine operator, or router. Tr. 79–80.

When asked about the same hypothetical worker with the additional limitation of one unscheduled, two-hour break per day in addition to the usual breaks, the VE stated that such a person could not maintain any jobs in the national economy. Tr. 80–81.

Christopher's attorney asked the VE whether an individual who consistently missed two days of work per month would be able to maintain competitive employment. Tr. 81. The VE stated that, based on his education, training, and work experience, such a person could not maintain competitive employment in the national economy. *Id.* Christopher's attorney also asked whether a person in the first hypothetical who needed a fifteen minute break after standing or walking for an hour but could not continue working for those fifteen minutes be able to maintain competitive employment. Tr. 81–82. The VE stated that such a person would not be able to maintain competitive employment. Tr. 82.

The ALJ issued his decision on March 1, 2024, finding that Christopher was not disabled from January 8, 2019, through the date of the decision. Tr. 26. Christopher requested review of the ALJ's decision, which the Appeals Council denied on October 24, 2024. Tr. 1, 6. Christopher timely filed a complaint in federal court on December 23, 2024. ECF No. 1.

### 2. *Legal Standards*

The Social Security Act provides disability insurance benefits to individuals with physical and mental disabilities who have contributed to the program and provides supplemental income to individuals with physical and mental disabilities who have limited income and resources. *See* 42 U.S.C. §§ 423, 1382. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

This court's review of the ALJ's disability determination is "highly deferential." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (citations omitted). The court asks "only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Id.* "A decision is supported by substantial evidence if 'credible evidentiary choices or medical findings support the decision.'" *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance.'" *Id.* (quoting *Williams v. Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The reviewing court must scrutinize the record to determine whether substantial evidence supports the ALJ's decision, but it may not reweigh the evidence or substitute its judgment. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

### 3. *Analysis*

#### A. *Step One*

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). A person engaged in substantial gainful activity is not disabled, regardless of her medical condition, age, education, or work experience. *Id.*

The ALJ found that Christopher has not engaged in substantial gainful activity since the alleged onset date. Tr. 18. Christopher does not dispute the ALJ's step-one finding.

#### B. *Step Two*

At step two, the ALJ determines whether any of the claimant's impairments, or any combination thereof, is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii) (citing 20 C.F.R. § 404.1509), 416.920(a)(4)(ii) (citing 20 C.F.R. § 416.909). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education[,] or work experience." *Keel*, 986 F.3d at 555 (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Christopher had medically determinable severe impairments of diabetes mellitus with neuropathy and recurrent lower extremity sores/ulcers, status-post hip fracture, disorder of the knee, and status-post osteomyelitis of the foot. Tr. 18. The ALJ considered all of Christopher's medically

determinable impairments, both severe and non-severe in determining Christopher's residual functional capacity. Tr. 18. Thus, any error in the ALJ's severity findings would be harmless. *See Esparza v. Saul,* No. 3:19-CV-2284, 2020 WL 6551272, at *13 (N.D. Tex. Oct. 2, 2020) (citing cases and stating that "[t]he Fifth Circuit has stated that a failure to make a severity finding at step two is not reversible error when an ALJ continues with the sequential evaluation process"). In any event, Christopher does not dispute the ALJ's step-two findings.

### C. Step Three

At step three, the ALJ determines if any severe impairment meets or equals a listed impairment (Listing) in Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The Listings describe impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The claimant will be found disabled if the claimant's impairments meet or equal all of the specified criteria of a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Whitehead,* 820 F.3d at 781. The claimant has the burden of establishing that an impairment meets or equals the specified medical criteria. *Whitehead,* 820 F.3d at 781.

The ALJ considered Listing Sections 11.14 (peripheral neuropathy), 1.18 (abnormality of a major joint(s) in any extremity), 1.21 (soft tissue injury or abnormality under continuing surgical management), and 1.22 (non-healing or complex fracture of the femur, tibia, pelvis, or one or more of the talocrural bones) and found that Christopher does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

8

Tr. 19–20. Christopher does not dispute the ALJ's step-three findings.

### D. Residual Functional Capacity

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e) (citing 20 C.F.R. § 404.1545), 416.920(e) (citing 20 C.F.R. § 416.945). The RFC is a determination of the most a claimant can do despite all physical and mental limitations. *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)). The RFC determination is "based on all the relevant medical and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e); *Perez*, 415 F.3d at 461–62 (citing 20 C.F.R. § 404.1545(a)(1)); SSR 96–8p, 1996 WL 374184, at *2, *3, *5 (July 2, 1996). The ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").

The ALJ found that Christopher has the RFC to perform work at the light exertion level, with additional limitations. Tr. 20.

> Specifically, the claimant can stand and/or walk about four hours in an eight-hour workday. However, standing and/or walking is limited to about an hour at a time, and then should be allowed to sit at the workstation while continuing to work for 10-15 minutes before he could again stand or walk. The claimant can also sit about six hours in an 8-hour workday. He can lift and/or carry 10 pounds frequently and 20 pounds occasionally. The claimant should never be required to work in proximity to hazards, such as deep water, open flames, dangerous moving machinery, or unprotected heights. Lastly, the claimant can only occasionally balance and negotiate stairs and ramps.

9

*Id.* In reaching that conclusion, the ALJ stated that he considered all of Christopher's symptoms and the extent to which his symptoms are consistent with the objective medical evidence and other evidence. *Id.* The ALJ also stated that he considered the medical opinions and prior administrative medical findings in the record. *Id.*

Christopher argues that the ALJ's evaluation of the state agency physicians' medical opinions is legally insufficient to allow for meaningful judicial review. ECF No. 10 at 4–8. The court agrees. To determine "what weight, if any, to give a medical opinion," ALJs consider a list of factors, outlined in 20 C.F.R. § 404.1520c. *Webster*, 19 F.4th at 719. In his decision, the ALJ must explain his consideration of the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor relates to how much the objective medical evidence and the medical source's explanation supports the medical opinion, while the consistency factor relates to the medical opinion's consistency with evidence from other medical sources. 20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). Here, the ALJ did not sufficiently explain the consistency or supportability of the state agency physicians' medical opinions.

The state agency physicians, Dr. Patty Rowley and Dr. Kim Rowlands, issued different medical opinions. Both doctors found that Christopher was limited to occasionally lifting or carrying up to 20 pounds, frequently lifting or carrying 10 pounds, and sitting for up to six hours in an eight-hour workday. Tr. 88–89, 102–103. Dr. Rowley found that Christopher was limited to only three hours of standing and/or walking in an eight-hour workday; only frequent climbing ramps or stairs, stooping, kneeling, crouching, and crawling; and only occasional balancing and climbing of ladders, ropes, or scaffolds. Tr. 89. Dr. Rowlands, on the other hand, found fewer limitations than did Dr. Rowley. Dr. Rowlands

10

found that Christopher was limited to four hours of standing and/or walking in an eight-hour day and that Christopher had no limitations related to climbing, stooping, kneeling, crouching, crawling, or balancing. Tr. 102–03.

The ALJ considered both Dr. Rowlands and Dr. Rowley's opinions together, in a single analysis that does not separate out his findings as to each. He found that:

> The opinions were somewhat persuasive as they were generally consistent with the overall medical record that demonstrated the claimant has a history of hip and foot fracture. Nevertheless, there was no evidence of a total functional loss as shown by the fact that the claimant did not require the use of an assistive device to ambulate and the diabetic ulcer did not require continuing surgical management, and the claimant demonstrated that he was able to ambulate normally and had full range of motion of the extremities (Exhibit 7F/17).

Tr. 24.

Although the ALJ articulated his consistency determination as to both opinions by stating that the consultants' findings were "generally consistent" with the overall medical record, he failed entirely to address the internal supportability of their findings in violation of 20 C.F.R. § 404.1520c and SSR 96-8p. The ALJ's RFC determination appears to accept and reject different portions of each of Dr. Rowlands and Dr. Rowley's opinions, without explaining which portions of each opinion he was accepting or rejecting or why or how each doctor's opinion was consistent or supported. This is error. *Cf. Rai R. v. Kijakazi*, No. 4:21-CV-2270, 2022 WL 4450487, at *5 (S.D. Tex. Sept. 23, 2022).

The ALJ did not explain specifically which parts of each opinion were "somewhat persuasive" or why he adopted portions of each doctor's "somewhat persuasive" findings. Without more, under the specific facts of this case, the court cannot assess the

11

validity of the ALJ's reasoning. *See Christina M. v. Bisignano*, No. 24-CV-3636, 2025 WL 2689668, at \*5–6 (S.D. Tex. July 28, 2025), *R. & R. adopted*, 2025 WL 2687862 (S.D. Tex. Sept. 16, 2025).

The ALJ's decision must stand or fall for the reasons stated in the ALJ's decision. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000*); Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (stating that the court "may affirm only on the grounds that the Commissioner stated for his decision"). It is improper for the court to provide a post hoc rationale for the ALJ's decision. Doing so would "usurp[] the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). The court recognizes that procedural perfection is not required, and that, in some cases, it may be patent from the face of the decision how the ALJ reached his conclusions. That is not the case here. Because the ALJ addressed both opinions together, did not fully address the necessary factors, and gave no explanation for incorporating certain limitations and excluding others, the court is unable to perform the statutorily mandated judicial review.

The error was not harmless. To make his determination that Christopher is not disabled, the ALJ relied on the VE's testimony that there were sufficient jobs in the national economy that a person with Christopher's RFC could perform. Tr. 25–26. It is not clear based on the current record whether, if posed with a more limited RFC including limitations like those Dr. Rowley contemplated, the VE would still testify that Christopher could perform the proffered jobs. The court will not guess what the ALJ would have done had he considered both doctors' findings separately and addressed the consistency and supportability of each. The court concludes that the ALJ's error was not harmless, and reversal and remand are warranted. The court does not reach and does not express any opinion about the other arguments that

12

Christopher raises in his motion for summary judgment. The undersigned also expresses no opinion about what RFC the ALJ should find or whether Christopher is disabled.

### 4. Conclusion

The ALJ's decision denying Social Security benefits is not supported by substantial evidence. Summary judgment in favor of Christopher is therefore appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, Christopher's Motion for Summary Judgment is **GRANTED**. The Commissioner's Motion for Summary Judgment is **DENIED**. The case is **REMANDED** for additional proceedings consistent with this opinion. The court will enter separate final judgment.

Signed at Houston, Texas, on March 3, 2026.

_____
Peter Bray
United States Magistrate Judge

13